CLERKS OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
8/24/2018
JULIA C. DUDLEY, CLERK
BY: s/ SUSAN MOODY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANITRA L. DEISHER, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:17CV00434 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| NANCY A. BERRYHILL, Acting | ) By: Hon. Glen E. Conrad |
| Commissioner of Social Security, | ) Senior United States District Judge |
| | ) |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social

Security denying plaintiff's claims for disability insurance benefits and supplemental security

income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42

U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g)

and 42 U.S.C. § 1383(c)(3). This court's review is limited to a determination as to whether there

is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the

requirements for entitlement to benefits under the Act. If such substantial evidence exists, the

final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir.

1966). Stated briefly, substantial evidence has been defined as such relevant evidence,

considering the record as a whole, as might be found adequate to support a conclusion by a

reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Anitra L. Deisher, was born on January 3, 1977, and eventually completed

her high school education. Ms. Deisher has been employed as a claims clerk. She last worked

on a regular and sustained basis in May of 2013. (Tr. 237). On August 29, 2013, Ms. Deisher

filed applications for disability insurance benefits and supplemental security income benefits. In

filing her current claims, Ms. Deisher alleged that she became disabled for all forms of substantial

gainful employment on May 6, 2013, due to depression, anxiety, cervical neck pain, migraine headaches, and back pain. (Tr. 218). Ms. Deisher now maintains that she has remained disabled to the present time. With respect to her application for disability insurance benefits, the record reveals that Ms. Deisher met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See generally 42 U.S.C. §§ 416(i) and 423(a).

Ms. Deisher's applications were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated January 4, 2017, the Law Judge also determined, after applying the five-step sequential evaluation process, that Ms. Deisher is not disabled. See 20 C.F.R. §§ 404.1520 and 416.920.[1] The Law Judge found that Ms. Deisher suffers from several severe impairments, including headaches, lumbago and cervicalgia, history of clavicle injury, premature coronary artery disease, and anxiety, but that these impairments do not, either individually or in combination, meet or medically equal the requirements of a listed impairment. (Tr. 20-21). The Law Judge then assessed Ms. Deisher's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. [§§] 404.1567(b) and 416.967(b) except the claimant can no more than occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant should have no more than occasional exposure to temperature extremes, excessive noise, or vibrations. The claimant can perform simple, unskilled tasks that do not require exposure to hazards, such as hazardous machinery and unprotected heights. The claimant should not have strict production rate or pace requirements, and can tolerate no more than occasional interaction with the public.

---

[1] The process requires the Law Judge to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and (5) if not, whether she can perform other work in the national economy. 20 C.F.R. §§ 404.1520 and 416.920. If a decision can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. Id.

(Tr. 23). Given such a residual functional capacity, and after considering testimony from a vocational expert, the Law Judge determined that Ms. Deisher is unable to perform any of her past relevant work. (Tr. 28). However, the Law Judge found that Ms. Deisher retains sufficient functional capacity to perform other work roles existing in significant number in the national economy. (Tr. 28-29). Accordingly, the Law Judge concluded that Ms. Deisher is not disabled, and that she is not entitled to benefits under either federal program. See generally 20 C.F.R. §§ 404.1520(g) and 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Ms. Deisher has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. The Law Judge's opinion reflects a thorough evaluation of Ms. Deisher's medical problems and the extent to which they affect her ability to work. Although Ms. Deisher suffers from a combination of physical and emotional impairments, substantial evidence supports the Law Judge's determination that she retains the residual functional capacity to perform a limited range of light, unskilled work.

3

The record reveals that Ms. Deisher was established as a new patient at Carilion Clinic Family Medicine – Salem on May 7, 2013, at which time she complained of joint pain, migraine headaches, and excessive crying. (Tr. 294). Plaintiff reported being under a lot of stress related to her job and her husband's unemployment. She advised the examining physician, Dr. Saima Sadiq, that her job was "making her life miserable" and that she was actively seeking other employment. (Tr. 294). Plaintiff requested a letter stating that she could not continue in her current position due to the symptoms of which she complained. On physical examination, Ms. Deisher exhibited no extremity muscle weakness, pain, tenderness or stiffness, and no joint pain or swelling. (Tr. 295). Dr. Sadiq opined that plaintiff's headaches were "likely more frequent due to stress," and that her crying spells were "likely due to depression." (Tr. 294). She prescribed Paxil and provided a letter recommending that Ms. Deisher "take time off for [a] few weeks" or "find a different job." (Tr. 298).

On October 9, 2013, Ms. Deisher presented to Carilion Clinic Orthopaedic with complaints of collarbone pain following an incident involving her car door. She was diagnosed with a possible clavicle fracture and advised that it should "heal uneventfully within six weeks." (Tr. 283). The examining physician noted that plaintiff should "[b]e careful about lifting, pushing or pulling any heavy objects." (Tr. 283).

Ms. Deisher established treatment with Dr. Suzanna Jamison at Carilion Clinic Internal Medicine on December 4, 2013. At that time, plaintiff complained of having "some anxiety issues," which she attributed to deaths in the family, estrangement from family, and feeling overwhelmed with family obligations. (Tr. 381). Plaintiff reported that she did not have "full blown panic attacks," but would become "stressed out" if she entered crowded places. (Tr. 381). Ms. Deisher also complained of headaches and neck pain, and reported that she had suffered from migraines "for years." (Tr. 381). She advised Dr. Jamison that she was using ibuprofen or

4

Goody's headache powder for pain, and that the medications would "take the edge off." (Tr. 381). Dr. Jamison discussed the possibility that plaintiff was experiencing "rebound" headaches due to analgesic medications. (Tr. 384). She prescribed Elavil and recommended that plaintiff stop smoking. (Tr. 384).

Ms. Deisher returned for a follow-up appointment with Dr. Jamison on January 15, 2014. She advised Dr. Jamison that the prescribed medication had helped her sleep at first, but was no longer providing as much relief. (Tr. 388). Plaintiff reported that she was still becoming anxious and shaky for no apparent reason, but had not experienced any "full blown panic attacks." (Tr. 388). Plaintiff further advised that she was "stay[ing] busy during the day" and "contemplating yoga." (Tr. 388). Dr. Jamison diagnosed plaintiff with premature coronary artery disease based on her family history, tobacco abuse, and migraine headaches. (Tr. 390). She increased plaintiff's prescription for Elavil and recommended that plaintiff dedicate time for relaxing forms of exercise.

During a three-month check-up in April of 2014, Ms. Deisher advised Dr. Jamison that "something [was] wrong with her back" and requested a referral to a spine specialist. (Tr. 394). She also had Dr. Jamison complete a medical source statement of her physical ability to perform work-related activities. (Tr. 307). Dr. Jamison opined that plaintiff can occasionally lift and/or carry less than ten pounds; stand and/or walk for less than two hours in an eight-hour workday; sit less than two-hours in an eight-hour workday; engage in limited pushing and/or pulling with her upper and lower extremities; and never climb, balance, kneel, crouch, crawl, or stoop. (Tr. 307-08).

Ms. Deisher underwent a spinal surgical evaluation on May 7, 2014. During the evaluation, she complained of lower back pain that radiated to her left leg. (Tr. 315). On physical examination, her gait was stable, her motor function was intact throughout the bilateral

lower extremities, and her straight-leg raising test was negative. (Tr. 318). X-rays of plaintiff's lumbar spine revealed a "slight curvature of the lower lumbar spine and mild lower lumbar degenerative disc and facet disease." (Tr. 321). The examining physician's assistant prescribed Flexeril and Voltaren, and recommended physical therapy. (Tr. 319).

Ms. Deisher returned to Carilion Clinic Orthopaedic on December 2, 2014 with complaints of pain in her lower back and neck. (Tr. 361). On physical examination, her lumber region was tender, but she had full strength throughout her bilateral lower extremities and her straight-leg raising test was negative. (Tr. 362). Plaintiff was diagnosed with lumber degenerative disc disease at L5-S1. (Tr. 362). She received an epidural steroid injection in that area on January 7, 2015. (Tr. 349).

Ms. Deisher returned for a follow-up orthopaedic appointment on April 13, 2015. She advised the physician's assistant that she had experienced only minimal relief from the injection, and that she had stopped going to physical therapy after the first session due to pain. (Tr. 366-67). The physician's assistant ordered an MRI and directed plaintiff to return following its completion. In the meantime, plaintiff presented to Dr. Jamison for an evaluation of her allergies, which she said were "worse when doing yard work." (Tr. 329).

On April 28, 2015, plaintiff underwent an MRI examination of her lumbar spine. The results were normal, showing "no disc herniation, spinal canal, or foraminal stenosis" at any level. (Tr. 350, 371-72). Likewise, nerve conduction testing performed on May 7, 2015 revealed no evidence of carpal tunnel syndrome, neuropathy, or radiculopathy. (Tr. 356).

Plaintiff saw Dr. Jamison again in June of 2015, at which time she complained of pain, stiffness, and difficulty sleeping due to psychosocial stressors. (Tr. 343). On physical examination, there were no signs of edema or trigger point tenderness. (Tr. 346). She was

6

diagnosed with joint paint, morning joint stiffness, fatigue, and tobacco use. Dr. Jamison recommended that she continue doing yoga and other forms of gentle exercise.

Ms. Deisher did not seek further medical treatment until April of 2016, when she presented to the emergency room with a sore throat. (Tr. 376). She was diagnosed with perintonsillar cellulitis and prescribed an antibiotic. (Tr. 378-79).

At the administrative hearing held on November 2, 2016, Ms. Deisher testified that she suffers from "very debilitating" migraine headaches a few times per month, for which she takes Advil or Goody's headache powder. (Tr. 41). She estimated that the headaches last anywhere from four days to an entire week. (Tr. 43). Ms. Deisher also testified that she experiences radiating pain in her back and left leg on a daily basis, and that her "neck hurts a lot." (Tr. 44-45). She estimated that she can only clean the house for approximately ten or fifteen minutes before needing to lie down and take a break. (Tr. 45). Plaintiff testified that she also continues to experience crying spells and anxiety, but that she is not taking any medication for these symptoms because she is unable to afford to go to the doctor. (Tr. 41).

After considering all of the evidence of record, the Law Judge determined that Ms. Deisher's physical impairments are not so severe as to prevent performance of lighter forms of work activity. In making this determination, the Law Judge found that Ms. Deisher's allegations of disabling physical limitations are not entirely credible. The Law Judge noted that the clinical evaluations discussed above include "relatively benign objective findings" and do not reflect "the type of medical treatment one would expect for a totally disabled individual." (Tr. 27). The Law Judge also noted that the record reflects a significant gap in the plaintiff's treatment, and that there was no mention of back pain, neck pain, or anxiety when she presented to the emergency room with a sore throat in April of 2016. (Tr. 27).

7

The Law Judge also declined to accept Dr. Jamison's opinions regarding plaintiff's physical ability to work. The Law Judge emphasized that Dr. Jamison had only seen Ms. Deisher on three occasions before completing the medical source statement at plaintiff's request, and that the limitations noted by Dr. Jamison were inconsistent with the record as a whole, including her own treatment notes. (Tr. 26). The Law Judge noted that "Dr. Jamison's prescribed treatment modalities have been essentially routine and/or conservative in nature and not what one would expect for a totally disabled individual." (Tr. 26). The Law Judge assigned greater weight to the opinions of Dr. Paula Nuckols, who reviewed the record at the request of the state agency. Dr. Nuckols opined that plaintiff is capable of performing light work with occasional postural limitations. (Tr. 81). The Law Judge found that Dr. Nuckols' assessment of plaintiff's physical residual functional capacity was more consistent with the objective evidence as a whole. (Tr. 27).

The Law Judge also concluded that Ms. Deisher's symptoms of anxiety do not render her disabled for all forms of substantial gainful employment or otherwise contribute to an overall disability.[2] In evaluating her mental impairment at step three of the sequential process, the Law Judge determined that Ms. Deisher has "moderate difficulties" with social functioning, in light of her expressed desire to avoid crowds and contact with strangers. (Tr. 22). The Law Judge also determined that Ms. Deisher has "moderate difficulties" with concentration, persistence, or pace. (Tr. 22). Although Ms. Deisher reported being able to "drive a car, go shopping, pay bills, count change, handle a savings account, use a checkbook/money orders, and knit," the Law Judge acknowledged that "stress affects a person's concentration, persistence, and pace," and accordingly found that plaintiff is moderately limited in this area based on the "stress issues she

---

[2] In determining that plaintiff's anxiety constitutes a severe impairment at step two of the sequential evaluation process, the Law Judge declined to fully adopt the opinions of the state agency consultants, who found that the existing treatment records failed to establish a medically determinable mental impairment. (Tr. 59, 90).

8

was experiencing at the alleged onset date." (Tr. 22). The Law Judge further found that, despite such limitations, Ms. Deisher is capable of performing "simple, unskilled tasks that do not involve exposure to hazards," do not have "strict production rate or pace requirements," and do not involve "more than occasional interaction with the public." (Tr. 23).

On appeal to this court, Ms. Deisher, through counsel, makes four arguments in support of her motion for summary judgment. First, Ms. Deisher argues that the Law Judge erred in failing to give significant weight to the opinions of her treating physician, Dr. Jamison. As indicated above, the Law Judge found that Dr. Jamison's assessment of Ms. Deisher's physical capacity to perform work-related activities was inconsistent with the record as a whole, including the mild findings documented in her examination notes and the conservative nature of the treatment she provided.

Having reviewed the record in its entirety, the court concludes that substantial evidence supports the Law Judge's decision to not give controlling weight to Dr. Jamison's opinions. Although the opinions of a treating source are generally entitled to greater weight under the administrative regulations applicable to plaintiff's claims, see 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2), the court believes that, in the instant case, the Law Judge properly determined to give greater weight to other medical evidence, including the report from Dr. Nuckols. The Law Judge reasonably concluded that the state agency physician's assessment of the plaintiff's physical residual functional capacity is more consistent with the clinical findings, the results of diagnostic tests (including essentially normal MRI and nerve conduction studies), and the lack of more aggressive treatment for plaintiff's physical impairments. In short, the court believes that the Law Judge's decision to discount the opinions offered by Dr. Jamison, and to rely instead on the opinions of the state agency physician, is well supported by the record. See, e.g., Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 66 (4th Cir. 2014) (affirming the Law Judge's decision to

reject the opinion of a treating physician that "was inconsistent with the mild to moderate diagnostic findings, the conservative nature of [the plaintiff's] treatment, and the generally normal findings during physical examinations").

Second, Ms. Deisher argues that the Law Judge's assessment of her mental impairment is not supported by substantial evidence. Citing a variety of decisions, most notably that of the United States Court of Appeals for the Fourth Circuit in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), plaintiff argues that the Law Judge's findings regarding her residual functional capacity ("RFC"), and the corresponding hypothetical question posed to the vocational expert, did not sufficiently accommodate her moderate difficulties with concentration, persistence, pace, and social functioning. For the following reasons, however, the court is unable to agree.

In Mascio, the Law Judge credited Mascio's diagnosis of an adjustment disorder and also found that she had moderate difficulties with maintaining concentration, persistence, or pace as a side effect of her pain medication. Id. at 638. Although the hypothetical posed to the vocational expert "said nothing about Mascio's mental limitations," the vocational expert included an "unsolicited addition of 'unskilled work,'" which "matched the ALJ's finding regarding Mascio's residual functional capacity." Id. The Fourth Circuit ultimately "agree[d] with other circuits that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Court reasoned that "the ability to perform simple tasks differs from the ability to stay on task." Id. Because the Law Judge failed to explain "why Mascio's moderate limitation in concentration, persistence, and pace at step three [did] not translate into a limitation in Mascio's residual functional capacity," the Fourth Circuit concluded that a remand was required. Id.

10

Upon review of the record, the court concludes that the Law Judge's assessment of Ms. Deisher's mental impairment is supported by substantial evidence and that remand is not required under Mascio. As indicated above, the Law Judge credited the plaintiff's testimony that she prefers to avoid "social situations with strangers" in determining that her anxiety results in moderate difficulties with social functioning. (Tr. 22, 46). Likewise, in determining that Ms. Deisher has moderate difficulties with concentration, persistence, or pace, the Law Judge took "into account the . . . stress issues she was experiencing at the alleged onset date," and acknowledged that "stress affects a person's concentration, persistence, and pace." (Tr. 22). After considering plaintiff's particular difficulties in these areas of functioning, the Law Judge found it appropriate to "include[] limitations in exposure to hazards, production work, and social interaction" in his assessment of her residual functional capacity. (Tr. 22). The Law Judge specifically determined that Ms. Deisher "can perform simple, unskilled tasks that do not require exposure to hazards," do not have "strict production rate or pace requirements," and do not involve "more than occasional interaction with the public." (Tr. 23). The Law Judge found that such restrictions adequately accommodate her issues with stress and anxiety, and that the record as a whole indicates that she does not require additional work-related limitations. (Tr. 27-28).

Thus, unlike Mascio, the Law Judge did not summarily limit Ms. Deisher to unskilled work without explanation. Instead, the Law Judge formulated several additional limitations that he found would sufficiently accommodate the plaintiff's particular difficulties with social interaction and with concentration, persistence, or pace. The court is satisfied that the Law Judge provided an adequate explanation of how his residual functional capacity findings fully accounted for Ms. Deisher's stress or anxiety-related limitations, and that his assessment is supported by substantial evidence. The simple fact is that the plaintiff has received minimal treatment for anxiety, and that none of her treating physicians has suggested that she has an emotional impairment that results in

11

more significant functional limitations than those identified by the Law Judge. Moreover, unlike many of the cases in which the rationale of Mascio has been applied, both a state agency physician and a state agency psychologist determined that Ms. Deisher does not suffer from a medically determinable mental impairment, much less one that results in moderate work-related limitations. For all of these reasons, the court concludes that remand is not required under Mascio.

Ms. Deisher's third argument is that the Law Judge failed to conduct a proper function by function analysis in assessing her residual functional capacity. In particular, Ms. Deisher contends that the Law Judge failed to make sufficient findings regarding her alleged need to lie down and rest during the day, her alleged difficulties with sitting and standing, and her alleged limitations stemming from migraine headaches. It is clear from the Law Judge's decision, however, that the Law Judge considered all of Ms. Deisher's claimed limitations, but found that such limitations were inconsistent with the objective medical findings, the conservative nature of the treatment provided, and the evidence pertaining to her daily activities. (Tr. 24, 27). Accordingly, the court believes that the Law Judge's treatment of Ms. Deisher's claimed limitations is consistent with the protocol established in Mascio and Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016), and that substantial evidence supports the Law Judge's evaluation of Ms. Deisher's residual functional capacity.

Finally, relying on the Fourth Circuit's decision in Brown v. Commissioner, 873 F.3d 251 (4th Cir. 2017), Ms. Deisher contends that the Law Judge's assessment of her testimony and subjective complaints is not supported by substantial evidence. While Ms. Deisher testified at the administrative hearing that she experiences debilitating headaches that last for several days at a time, chronic back and leg pain, weakness and numbness in her lower extremities, and difficulty sleeping and concentrating, the Law Judge found that the plaintiff's statements regarding the intensity and limiting effects of these symptoms were not entirely consistent with the medical

12

evidence and other evidence in the record. The Law Judge provided specific reasons for his decision to not fully credit the plaintiff's statements regarding the severity of her symptoms. The Law Judge observed that the plaintiff reported performing yard work and other activities of daily living that were inconsistent with complaints of disabling symptoms and limitations. (Tr. 27). The Law Judge also noted that Ms. Deisher's objective medical findings have been relatively benign, and that her impairments have been treated with routine, conservative measures. (Tr. 27-28). The Law Judge further observed that plaintiff did not seek or obtain medical treatment for nearly ten months before she presented to the emergency room in April of 2016 with complaints of a sore throat, and that the records from that visit include no mention of neck pain, back pain, or anxiety. (Tr. 27).

Upon review of the record, the court is unable to discern any error in the Law Judge's credibility findings. Unlike Brown, the Law Judge carefully considered plaintiff's medical history along with her own allegations regarding the symptoms of her physical and mental impairments. The court agrees that plaintiff's allegations of totally disability symptoms are somewhat inconsistent with the complaints documented in the treatment records, the objective findings on examination, and the conservative treatment measures provided. Thus, the court is satisfied that substantial evidence supports the Law Judge's decision not to fully credit Ms. Deisher's testimony.

In affirming the Commissioner's final decision, the court does not suggest that Ms. Deisher is free of all pain, discomfort, and emotional dysfunction. Indeed, the medical record confirms that plaintiff suffers from impairments that can be expected to result in subjective limitations. However, none of the doctors who have treated her impairments has identified or documented the existence of specific physical or emotional manifestations which could be expected to result in total disability. The fact remains that the medical record simply does not include clinical

13

findings, objective tests, or laboratory results that are consistent with totally disabling symptomatology. It must be recognized that the inability to work without any subjective complaints does not of itself render a claimant disabled. See Craig, 76 F.3d at 592. It appears to the court that the Law Judge considered all of the medical evidence, as well as all of the subjective factors reasonably supported by the record, in adjudicating Ms. Deisher's claims for benefits. Thus, the court concludes that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, the resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra.

The Clerk is directed to send certified copies of this memorandum opinion to all counsel of record.

DATED: This 24th day of August, 2018.

_____
Senior United States District Judge